

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DR. LAWRENCE RAINEY, )
                    Plaintiff, )
v. ) No. 07 C 3566
PLAINFIELD COMMUNITY CONSOLIDATED )
SCHOOL DISTRICT NO. 202; )
JOHN HARPER, in his individual )
capacity; and the Members of )
the Board of Education of )
Plainfield Community Consolidated )
School District No. 202 in their )
individual capacities including )
MICHAEL KELLY, LINDA JOHNSON, )
MICHAEL ROGER BONUCHI, RICHARD )
FRIDDLE, RONALD KAZMAR, ROD )
WESTFALL, and VICTORIA EGGERSTEDT, )
                    Defendants. )

## OPINION AND ORDER

Plaintiff Lawrence Rainey was formerly employed as the principal of Liberty Elementary School in defendant Plainfield Community School District No. 202 (the "District"). Also named as defendants, in their individual capacities, are members of the District's Board and the District's Superintendent. Plaintiff alleges his employment was terminated when his contract was not renewed. The effective termination date was the end of the

2005/2006 school year. Plaintiff alleges the termination of his employment was motivated by discrimination against him based on his race, Black/African-American. As against the District only, plaintiff alleges race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. Against all defendants, including the District, he also brings a claim, pursuant to 42 U.S.C. § 1983, that he was retaliated against for speaking out on matters of public concern in violation of the First Amendment. Also against all defendants, he claims that his employment was terminated because of his race and in retaliation for opposing race discrimination in violation of 42 U.S.C. § 1981. Presently pending is plaintiff's motion to compel.

Before turning to the specific requests, one general issue will be addressed. Plaintiff seeks discovery regarding possible similarly situated persons ("comparators") who may have been treated more favorably than he. In seeking comparator discovery, plaintiff requests discovery--regarding performance issues, evaluations, discipline, etc.--covering persons who were principals or assistant principals from Fall 2002 through Summer 2007 at all elementary and junior high schools in the District.[1]

---

[1] Neither side makes any representation regarding changes on the District's Board during this time period nor any change in Superintendent during this time period.

Defendants represent that there were up to 102 different persons in these positions during that time period.[2] Defendants also contend that assistant principals cannot be similarly situated because a recommendation to discharge an assistant principal is initiated by the school's principal while a recommendation to discharge a principal is initiated by the Superintendent. Defendants also note, without any specificity, that an assistant principal and principal have different job duties. So far defendants have limited their responses to personnel documents from the 2006-2007 school year for assistant principals and principals[3] and the ten principals who opened new schools from 2001 through 2006.[4]

It is unclear why defendants chose the 2006-2007 school year to focus on instead of the 2005-2006 school year that was plaintiff's last year of employment. When this type of issue was first raised before the court on an earlier motion to compel, the court was initially unaware that the District had such a large

---

[2] Plaintiff's requests refer to the past five years, which would be the 2002-2003 school year through the 2006-2007 school year. Defendants' argument, and count, also includes the 2001-2002 school year. Presumably, eliminating the one year would reduce the count by some.

[3] Responsive personnel documents were disclosed for nine principals and nineteen assistant principles.

[4] During plaintiff's last year of employment, he had opened a new school.

number of schools with a larger than expected pool of principals and assistant principals. Given the size of the pool, it is sufficient to generally limit defendants' responses to the 2006-2007 school year and principals of new schools that have already been provided and to add the 2005-2006 school year. As to whether assistant principals are appropriate comparators for plaintiff, it must be recognized that comparators need not be completely identical, only substantially similar. Humphries v. CBOCS West, Inc., 474 F.3d 387, 405 (7th Cir. 2007), aff'd, 128 S. Ct. 1951 (2008). There is no "magic formula." Id. (quoting Chavez v. Illinois State Police, 251 F.3d 612, 636 (7th Cir. 2001)).

> It is important not to lose sight of the common-sense aspect of this inquiry. It is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees--distinctions can always be found in particular job duties or performance histories or the nature of the alleged transgressions. See, e.g., Ezell [v. Potter], 400 F.3d [1041,] 1050 [(7th Cir. 2005)]. Now, it may be that the degree of similarity necessary may vary in accordance with the size of the potential comparator pool, as well as to the extent to which the plaintiff cherry-picks would-be comparators, see Crawford v. Ind. Harbor Belt R.R. Co., 461 F.3d 844, 845-46 (7th Cir. 2006), but the fundamental issue remains whether such distinctions are so significant that they render the comparison effectively useless. In other words, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of

> discrimination or retaliation--recall that the
> plaintiff need not prove anything at this stage.

Humphries, 474 F.3d at 405.

It must be recognized that the relevance standard for discovery--reasonably calculated to lead to the discovery of admissible evidence, Fed. R. Civ. P. 26(b)--is broader than the admissibility standard at trial. While principals and assistant principals have different duties that have not been explicated, presumably they also have many overlapping duties. Also, even if a different person initiates discipline for each type of job, presumably it is still the District's Board that makes the final determination. It may also be that the Superintendent considers any disciplinary recommendation of a principal before the recommendation is forwarded to the Board. On the present motion, it cannot be determined that there is no possibility that information about assistant principals will not lead to discoverable material. While, the pool of potential comparables is larger than initially believed, including assistant principals for two years does not make the pool too big or defendants' response overly burdensome.

In sum, the pool generally to be considered for discovery regarding comparables are persons who were principals or assistant principals at elementary schools and junior high schools during the school years Fall 2005 through Summer 2007, plus persons who

were principals at schools that opened Fall 2001 through Fall 2006. Except as to the principals at new schools, defendants need only look for the pertinent documents that are from the 2005 to 2007 time period. To the extent those documents disclose actual or possible discipline during that time period that was based on earlier conduct or not resolved until after Summer 2007, defendants may be required to disclose related documents outside the time period. Issues of that type are to be considered as they arise and should be resolvable between the parties.

The specific interrogatories and document requests raised by plaintiff will now be considered.

Interrogatory No. 7 is: "In the past 5 years, the race, address, phone number of any principal or assistant principal who was terminated and the reasons therefore. Provide all documents related thereto." Defendants object to the time period covered and including assistant principals, but respond that no one has been terminated. Defendants acknowledge that they do not consider a non-renewal of a contract to be a termination. While there are distinctions between termination and non-renewal, plaintiff himself allegedly was not renewed. Defendants shall respond regarding persons who were not renewed. Presumably, non-renewal is not a frequent occurrence. This should produce less responses than the types of personnel documents requested. For Interrogatory No. 7 only, defendants shall respond regarding

non-renewals of principals and assistant principals starting with the Fall 2003 school year and ending Summer 2008.

Defendants object to the scope of Document Requests 53, 54, and 55. Defendants shall respond for the two-year period and new school principals as discussed above.

While defendants object to Second Document Requests 68, 69, 70, 75, and 76, they also respond that there are no further responsive documents. Therefore, there are no documents to compel and these requests need not be considered further.

Plaintiff also raises general objections regarding defendants' privilege log. The only documents from the log that plaintiff specifically identifies as being sought are transcripts of certain Board closed sessions. Even though these documents are identified as being at issue, plaintiff does not support his objections with any significant argument. Defendants, however, have responded with affidavits describing the pertinent topics discussed in the closed sessions and an argument as to why the transcripts are privileged. This is the only privilege issue that will be addressed.

In a January 9, 2006 letter to the Board President, plaintiff complained about his treatment by certain administrators, including the District Superintendent. The letter included an accusation that plaintiff had been mistreated because of his race. At the first closed session that is at

issue, a District attorney advised the Board regarding the potential for litigation and possible responses and actions. He advised them as to a letter inviting plaintiff to meet with the Board and what legal procedures needed to be followed. Subsequently, the Board met with plaintiff. Subsequent closed sessions, during times that plaintiff was not present, included further legal advice as to possible litigation and actions that could be taken concerning plaintiff's employment. During closed sessions, the possibility of settling with plaintiff was also discussed. Although not expressly stated in the affidavits, the closed sessions apparently also involved discussions of the merits of plaintiff's contentions and the quality of his work.

Defendants contend the entire closed door sessions, other than when plaintiff was present, are protected by the attorney-client privilege, federal deliberative process privilege, and the Illinois Open Meetings Act, 5 ILCS 120.[5] Plaintiff does not dispute that the portions of the meeting involving legal advice are privileged, but seeks all other discussions that took place. Defendants have adequately shown the necessary requirements for invocation of the deliberative process privilege. See Tumas v. Board of Educ. of Lyons Twp.

---

[5] No opinion is expressed as to whether the Illinois Open Meetings Act applies to discovery in this case that involves only federal claims.

High Sch. Dist. No. 204, Cook County Ill., 2007 WL 2228695 *1-3 (N.D. Ill. July 31, 2007). The pertinent decisionmakers are available to be deposed, so plaintiff has other means of obtaining the pertinent information. Defendants will not be ordered to further disclose the transcripts of closed sessions.

IT IS THEREFORE ORDERED that plaintiff's third motion to compel [41] is granted in part and denied in part. Within 21 days, defendants shall, as described herein, supplement their responses to Interrogatory No. 7 and Document Requests 53, 54, and 55. Each party shall bear its own costs related to the third motion to compel. By November 3, 2008, the parties shall file their proposed deposition schedule. A status hearing will be held on November 19, 2008 at 11:00 a.m.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: OCTOBER 24, 2008